## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ARIZONA FAMILY HEALTH PARTNERSHIP** | : |
| **3101 N. Central Ave., Ste. 1120** | : |
| **Phoenix, AZ 85012** | : |
| | : |
| **and** | : |
| | : |
| **FAMILY PLANNING COUNCIL OF IOWA 108** | : |
| **3rd Street, Suite 220** | : |
| **Des Moines, IA 50309** | : |
| | : |
| Plaintiffs, | :  Case No. |
| | : |
| v. | : |
| | : |
| **UNITED STATES DEPARTMENT OF** | : |
| **HEALTH AND HUMAN SERVICES** | : |
| **Serve: Office of the General Counsel** | : |
| **200 Independence Avenue, S.W.** | : |
| **Washington, DC 20201** | : |
| | : |
| **Serve:  Matthew G. Whitaker** | : |
| **Acting Attorney General of the United** | : |
| **States** | : |
| **U.S. Department of Justice** | : |
| **950 Pennsylvania Avenue, NW** | : |
| **Washington, DC 20530-0001** | : |
| | : |
| **Serve: Jessie K. Liu** | : |
| **United States Attorney for the District of** | : |
| **Columbia** | : |
| **555 4th Street, NW** | : |
| **Washington, DC 20530** | : |
| | : |
| **Defendant.** | : |

## **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Plaintiffs Arizona Family Health Partnership ("AFHP") and Family Planning Council of Iowa ("FPCI") for their complaint state as follows:

**INTRODUCTION**

1.  This "reverse FOIA" action arises out of the United States Department of Health and Human Services' ("HHS") final decisions, each dated November 2, 2018, to freely and publicly disseminate to competitors the confidential commercial and financial information recently submitted by AFHP and FPCI in their respective proposals for Federal healthcare grant awards administered by HHS.

2.  After submitting their proposals on May 21, 2018, and May 17, 2018, respectively, both AFHP and FPCI received grant awards from HHS and began performing. Subsequently, HHS abruptly and without precedent indicated that it was (1) significantly shortening the performance period of the grant awards, (2) posting AFHP's and FPCI's proposals on HHS's public website, and (3) resoliciting sources for the same grant awards.

3.  AFHP's and FPCI's proposals to HHS contain confidential commercial and financial information—information that AFHP and FPCI do not customarily release to the public and the disclosure of which would do great competitive harm to both organizations relative to their competitors in a competitive grant-funding marketplace.

4.  The AFHP and FPCI proposals are not stale—meaning the very same innovative solutions that caused HHS to originally select AFHP and FPCI are now likely to be appropriated and utilized by competitors in HHS's re-solicitation process.

5.  AFHP and FPCI timely objected to HHS's proposed release of the proposals, and HHS thereafter acknowledged that some information in the proposals was exempt from disclosure under FOIA. But HHS's agreed redactions are internally inconsistent and confusing. More troubling, HHS rejected AFHP's and FPCI's proposed redactions without providing any reasoned basis to do so, and HHS intends to release additional information contained in the proposals that is exempt from disclosure under the Freedom of Information Act, 5 U.S.C. § 552, and, independently, by the Trade Secrets Act, 18 U.S.C. § 1905.

6. HHS's refusal to withhold confidential commercial and financial information in the proposals is arbitrary, capricious, contrary to law, and unsupported by substantial evidence. HHS's conduct violates the Administrative Procedure Act and will destroy the competitive process by enabling AFHP's and FPCI's competitors to simply "cut and paste" large tracts of the grant narratives into their own proposals.

7. HHS has indicated that it intends to publicly post AFHP's and FPCI's proposals on November 9, 2018—and has inexplicably refused AFHP's and FPCI's requests to delay the release of those proposals. HHS has provided to AFHP and FPCI no explanation for the urgency behind the release.

8. Accordingly, AFHP and FPCI seek a temporary restraining order preventing HHS from releasing their respective proposals until such time as the Court can conduct a hearing on AFHP's and FPCI's motion for a preliminary injunction.

9. AFHP and FPCI further seek a declaration that the confidential commercial and financial information which HHS intends to release is exempt from disclosure under FOIA and subject to 18 U.S.C. § 1905. AFHP and FPCI also seek a permanent injunction preventing HHS from disclosing the confidential commercial and financial information contained in the proposals.

## JURISDICTION AND VENUE

10. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331 because the action arises under the laws of the United States, including the Administrative Procedure Act, 5 U.S.C. §§ 701-706; the Freedom of Information Act, 5 U.S.C. § 552(b)(4); and the Trade Secrets Act, 18 U.S.C. § 1905. The Court also has jurisdiction under 28 U.S.C. §§ 2201-2202.

11. Plaintiffs' have exhausted their administrative remedies, and HHS has indicated that Plaintiffs must seek judicial review to forestall the release of their proposals.

12. Venue is proper in the District of Columbia under 28 U.S.C. § 1391(e), 5 U.S.C. § 703, and 5 U.S.C. § 552(a)(4)(B).

## THE PARTIES

13. Plaintiff Arizona Family Health Partnership is a 501(c)(3) nonprofit organization with its principal place of business in the State of Arizona. In 2018, AFHP served more than 35,000 clients.

14. Plaintiff Family Planning Council of Iowa is a 501(c)(3) nonprofit organization with its principal place of business in the State of Iowa. In calendar year 2017, FPCI served more than 23,000 clients.

15. Defendant the United States Department of Health and Human Services is headquartered in Washington, D.C. HHS is an "agency" as contemplated by the Administrative Procedure Act, 5 U.S.C. § 701(b)(1), and 28 U.S.C. § 1391. HHS has custody and control over copies of the proposal submitted by AFHP and the proposal submitted by FPCI—both of which contain confidential commercial and financial information and trade secrets.

## FACTS COMMON TO BOTH PLAINTIFFS

16. In 1970, Congress passed and the President signed the Title X Family Planning Program, 42 U.S.C. § 300 *et seq.* Under that authority, HHS "is authorized to make grants to . . . nonprofit private entities to assist in the establishment and operation of voluntary family planning projects which shall offer abroad range of acceptable and effective family planning methods and services . . . ." *Id.* § 300. HHS's implementing regulations, 42 C.F.R. Part 59, further delineate the process to apply for and be awarded Title X grants.

17. Under this rubric, the Office of Population Affairs ("OPA") within HHS oversees the Title X federal family planning program. Title X is a categorical grant and, as such, grants can be awarded directly by the OPA to state governments, local governments, tribal entities, and non-profit entities. Proposals and awards are generally based on geographic Service Delivery Areas.

18. The Title X grant program is extremely competitive, with dozens of public and private entities across the United States actively competing during each round of competition. HHS represents that it may award as many as 100 Title X grant awards.

19. The grant process begins with a Funding Opportunity Announcement that HHS publishes on its website. Organizations, such as Plaintiffs, then submit proposals in response. Proposals are screened for technical compliance and Application Responsiveness Criteria then reviewed by an Objective Review Committee ("ORC"). Successful applicants receive a Notice of Award that HHS will enter into a grant with them for a Title X project.

20. Until 2018, the Title X grant awards were generally for a minimum of three-year project periods. Thus, a grant was only open to competition every three years, meaning proposals typically might in whole or in part grow stale by the next competition. In addition, the competitive proposals were staggered across the country so that only about one third of the grants were competitive in a given year.

21. On August 3, 2017, all existing Title X grants were ended effective either March 31, 2018, or June 30, 2018, depending on the grant award. The result of this was that all Title X grants became competitive with the next FOA.

22. The operative Funding Opportunity Announcement, FOA No. PA-FPH-18-001 (the "2018 FOA"), was issued February 23, 2018. HHS's FOAs actively solicit entities like AFHP and FPCI to propose unique, innovative, and state-of-the art solutions to accomplish the broader purposes of Title X as articulated in the FOA. For example, the 2018 FOA "encourage[s] all qualified applicants, _especially those proposing innovative strategies_ . . . to apply."

23. Proposals for the 2018 FOA were due May 24, 2018. Submitted proposals were screened through a technical review process which determined if the technical aspects were met such as page length, page margins, basic documents, etc. Each proposal then went through an ORC, which reviewed and scored the proposal based on identified criteria.

### AFHP FACTS

24. Having received notice of the 2018 FOA on February 23, 2018, AFHP began to prepare its proposal. For the next three months, AFHP spent considerable time and money drafting that proposal, which it ultimately submitted to HHS on May 21, 2018. AFHP's

proposal, totaling nearly 200 pages, analyzed in great detail its business model, budget, the needs of the population AFHP would serve, and the specific actions AFHP would take to serve those populations if awarded a Title X grant. In total, AFHP spent many thousands of dollars in staff time developing the contents of its proposals.

25. AFHP's proposal contains its trade secrets and confidential commercial or financial information. AFHP takes several measures to maintain the confidentiality of this information. For example, AFHP password-protects its computers and computer networks, and uses network security to limit access to various drives on its computer network. AFHP's physical records are kept in locked file cabinets. AFHP's internal manuals include confidentiality policies and employees are annually required to sign a statement that addresses confidentiality practices. Access to AFHP's facilities is restricted to authorized personnel, who must use keys to access offices. AFHP does not post its proposal on its website. AFHP takes these measures to protect the unauthorized or inadvertent dissemination of the confidential and proprietary information contained in its proposal.

26. Over the next two months, AFHP's proposal was screened and evaluated by HHS. On August 2, 2018, HHS informed AFHP that it intended to award AFHP a Title X grant.

27. On August 20, 2018, however, HHS asked AFHP to submit a seven-month budget for a Title X grant, rather than a twelve-month budget. AFHP diligently responded with a revised budget on August 22, 2018.

28. On August 29, 2018, HHS issued a Notice of Award ("NOA") to AFHP, informing it that it had been awarded a seven-month Title X grant, to run from September 1, 2018, to March 31, 2019. AFHP is currently performing under the terms of that NOA. HHS indicated it would be issuing a new FOA to solicit proposals for Title X grants to begin on April 1, 2019.

29. On September 4, 2018, HHS emailed AFHP a Pre-Disclosure Notice ("PDN") informing AFHP that HHS intended to publicly publish AFHP's proposal pursuant to FOIA. HHS acknowledged, however, that it had not received any FOIA request for AFHP's proposal.

HHS informed AFHP that it had ten working days to propose objections to the proposed release of its nearly 200-page proposal (and redactions). Despite the lack of any pending FOIA request, HHS stated, "The time constraints set forth in the FOIA require Federal agencies to promptly respond to requests; therefore, we are unable to offer you additional time to provide a response."

30. On information and belief, HHS intends to distribute AFHP's proposal to competitors. In turn, a competitor could crib from AFHP's proposal to assemble a proposal that HHS could give a passing grade and award the competitor a Title X grant instead of AFHP.

31. AFHP again diligently worked to propose redactions to its proposal. On September 17, 2018, AFHP provided to HHS its proposal with redactions pursuant to FOIA Exemptions 4 and 6, 5 U.S.C. §§ 552(b)(4) and (b)(6), for trade secrets, confidential commercial or financial information, and personal information. AFHP also submitted a 12-page letter describing in detail the justifications for its redactions, namely, that disclosing the information would cause AFHP significant competitive harm.

32. On November 2, 2018, HHS emailed AFHP, through AFHP's counsel, a Notice of Intent, wherein HHS said it intended to publish AFHP's proposal on November 9, 2018. HHS attached AFHP's proposal with HHS's redactions.

33. HHS accepted a subset of AFHP's redactions, including redactions for dollar values in AFHP's budget and AFHP's letters of commitment from its sub-recipient affiliates to which AFHP administers its Title X grant funds. But HHS rejected a significant portion of AFHP's redactions despite AFHP's 12-page explanation of those redactions. HHS baldly declared without further explanation, "our office does not agree with the majority of your redactions," and "we do not believe you have established that the release of some information will impair the government's ability to obtain necessary information in the future or that it will cause substantial harm to the company's competitive positions. Accordingly, we have determined that the information is not protected from disclosure by Exemption 4."

34. HHS's Notice of Intent not only failed to provide an adequate explanation of its decision, but was internally inconsistent in several ways: HHS stated that it intended to release

Organization Charts, but also said that it had redacted those very same Organization Charts; HHS said it would redact the names of sub-recipients, but HHS's redactions failed to redact that information in numerous locations.

35. On November 5, 2018, AFHP sought from HHS a one-week delay of the anticipated release of records. HHS—without explanation—denied the request.

36. On November 7, 2018, HHS issued a new FOA (the "2019 FOA") for Title X grants to be awarded to begin funding on April 1, 2019. The contents of AFHP's proposal submitted on May 21, 2018, would be exceptionally useful in the competition under the 2019 FOA. Disclosure of AFHP's previous proposal would allow competitors to crib from that proposal and build off AFHP's success at no expense to those competitors while significantly disadvantaging AFHP.

## **FPCI FACTS**

37. Having received notice of the 2018 FOA on February 23, 2018, FPCI began to prepare its proposal. For the next three months, FPCI spent considerable time and money drafting that proposal, which it submitted on May 17, 2018. FPCI's proposal, totaling 232 pages, analyzed in great detail its business model, budget, the needs of the population FPCI would serve, and the specific actions FPCI would take to serve those populations if awarded a Title X grant. Consistent with the 2018 FOA's instructions and historic Title X grants, FPCI wrote its proposal for a multi-year grant. In total, FPCI spent many thousands of dollars in staff time developing the contents of its proposal.

38. FPCI takes several measures to maintain the confidentiality of this information. For example, FPCI password-protects its computers and computer networks, and uses network security to limit access to various drives on its computer network. FPCI's physical records are kept in locked file cabinets. FPCI's internal manuals include confidentiality policies. Access to FPCI's facilities is restricted to authorized personnel, who must use keys to access offices. FPCI stations receptionists at main entrances. FPCI does not post its proposal on its website. FPCI takes these measures to protect the unauthorized or inadvertent dissemination of the confidential

and proprietary information contained in its proposals.

39. Over the next two months, FPCI's proposal was screened and evaluated by HHS.

40. On August 27, 2018, HHS issued a Notice of Award ("NOA") to FPCI, informing it that it had been awarded a seven-month Title X grant, to run from September 1, 2018, to March 31, 2019. FPCI is currently performing under the terms of that NOA. HHS indicated it would be issuing a new FOA to solicit proposal for Title X grants to begin on April 1, 2019.

41. On September 4, 2018, HHS emailed FPCI a Pre-Disclosure Notice ("PDN") informing FPCI that HHS intended to publish FPCI's proposal pursuant to FOIA. HHS acknowledged, however, that it had not received any FOIA request for FPCI's proposal. HHS informed FPCI that it had ten working days to propose redactions to its 232-page proposal. Despite the lack of any pending FOIA request, HHS stated, "The time constraints set forth in the FOIA require Federal agencies to promptly respond to requests; therefore, we are unable to offer you additional time to provide a response."

42. On information and belief, HHS intends to distribute FPCI's proposal to competitors. In turn, that competitor could crib from FPCI's proposal to assemble a proposal that HHS could give a passing grade and award the competitor a Title X grant instead of FPCI.

43. FPCI diligently worked to propose redactions to its proposal. On September 17, 2018, FPCI provided to HHS its proposal with redactions pursuant to FOIA Exemptions 4 and 6, 5 U.S.C. § 552(b)(4), (6), for trade secrets, confidential commercial or financial information, and personal information. FPCI also submitted a 10-page letter describing in great detail the justifications for its redactions, namely that disclosing the information would cause FPCI significant competitive harm.

44. On November 2, 2018, HHS emailed FPCI, through FPCI's counsel, a Notice of Intent, wherein HHS said it intended to publish FPCI's proposal on November 9, 2018.

45. HHS accepted a subset of FPCI's redactions, including redactions for dollar values in FPCI's budget and FPCI's letters of commitment from its sub-recipient affiliates to which FPCI administers its Title X grant funds. But HHS rejected a significant portion of

FPCI's redactions despite FPCI's 10-page explanation of those redactions.  HHS baldly declared without further explanation, "our office does not agree with the majority of your redactions," and "we do not believe you have established that the release of some information will impair the government's ability to obtain necessary information in the future or that it will cause substantial harm to the company's competitive positions.  Accordingly, we have determined that the information is not protected from disclosure by Exemption 4."

46.   HHS's Notice of Intent not only failed to provide an adequate explanation of its decision, but was internally inconsistent in several ways: HHS stated that it intended to release Organization Charts, but also said that it had redacted those very same Organization Charts; HHS said it would redact the names of sub-recipients, but HHS's redactions failed to redact that information in numerous locations.

47.   On November 5, 2018, FPCI sought from HHS a one-week delay of the anticipated release of records.  HHS—without explanation—denied the request.

48.   On November 7, 2018, HHS issued a new FOA—the 2019 FOA—for Title X grants to be awarded to begin funding on April 1, 2019.  The contents of FPCI's proposal submitted on May 17, 2018, would be exceptionally useful in the competition under the 2019 FOA.  Disclosure of FPCI's previous proposal would allow competitors to crib from that proposal and build off FPCI's success at no expense to those competitors while significantly disadvantaging FPCI.

### HHS'S RELEASE WILL CAUSE PLAINTIFFS IRREPARABLE HARM

49.   HHS's release of AFHP's Title X proposal submitted under the 2018 FOA will cause immediate, irreparable harm to AFHP because AFHP's competitors would be able to view, use, copy, and appropriate AFHP's confidential proprietary and trade-secret information.  Those same competitors would be able to unjustly benefit from the unique and innovative solutions AFHP has proposed to HHS by deploying those same solutions in the competition HHS is now operating under the 2019 FOA.  Upon information and belief, given the absence of a FOIA request, HHS has decided to release AFHP's proposal for the specific purpose of providing a

roadmap for AFHP's competitors for Title X funding to benefit from the unique and innovative solutions that AFHP has developed and identified in its own Title X proposal.

50.     HHS's release of FPCI's Title X proposal submitted under the 2018 FOA will cause immediate, irreparable harm to FPCI because FPCI's competitors would be able to view, use, copy, and appropriate FPCI's confidential proprietary and trade-secret information. Those same competitors would be able to unjustly benefit from the unique and innovative solutions FPCI has proposed to HHS by deploying those same solutions in the competition HHS is now operating under the 2019 FOA. Upon information and belief, given the absence of a FOIA request, HHS has decided to release FPCI's proposal for the specific purpose of providing a roadmap for FPCI's competitors for Title X funding to benefit from the unique and innovative solutions that FPCI has developed and identified in its own Title X proposal.

## COUNT I
## Violation of Administrative Procedure Act – FOIA Exempt
## (AFHP Against HHS)

51.     AFHP reallages paragraphs 1-36 and 49 as if fully alleged herein.

52.     FOIA authorizes agencies to disclose information only under certain circumstances and upon a request for records. 5 U.S.C. § 552(a). Exemption 4 of FOIA, however, exempts confidential commercial and financial information, as well as "trade secrets" from disclosure under FOIA.

53.     The AFHP proposal sections at issue reflect information obtained from a person (AFHP) that is AFHP's confidential commercial and financial information, as well as containing AFHP trade secrets.

54.     AFHP's proposal sections are exempt from disclosure under FOIA. 5 U.S.C. § 552(b). Release of AFHP's proposal sections is therefore contrary to law.

55.     HHS has failed to adequately explain its release decision—or to provide any reasoned basis for its decision at all—and the release decision is unsupported by substantial evidence, inadequate to permit effective judicial review, and is per se arbitrary and capricious.

56. HHS's determination to release the information is an abuse of discretion, contrary to law, and the result of a severely defective administrative procedure under the APA.

## COUNT II
### Violation of the Administrative Procedure Act - Trade Secrets Act
**(AFHP Against HHS)**

57. AFHP realleges paragraphs 1-36 and 49 as if fully alleged herein.

58. The Trade Secrets Act provides that any government official or employee who publishes, discloses, or makes known in any manner, or to any extent not authorized by law any information received in the course of employment that relates to trade secrets, confidential statistical data, or amounts of any income, profits, or losses, shall be fined or imprisoned, and shall be removed from office or employment.  18 U.S.C. § 1905.

59. Information in AFHP's proposal is covered under the Trade Secrets Act.

60. Accordingly, HHS's decision to release AFHP's information in question is contrary to law and in violation of the Administrative Procedure Act, 5 U.S.C. §§ 701-706.

61. To the extent that HHS even considered the Trade Secrets Act before making its decision, such decision is arbitrary and capricious, an abuse of discretion, contrary to law, and the result of severely defective administrative procedure in violation of the Administrative Procedure Act, 5 U.S.C. §§ 701-706.

## COUNT III
### Violation of the Administrative Procedure Act – FOIA Exempt
**(FPCI Against HHS)**

62. FPCI realleges paragraphs 1-23, 37-48, and 50 as if fully alleged herein.

63. FOIA authorizes agencies to disclose information only under certain circumstances and upon a request for records.  5 U.S.C. § 552(a).  Exemption 4 of FOIA, however, exempts confidential commercial and financial information, as well as "trade secrets" from disclosure under FOIA.

64. The FPCI proposal sections at issue reflect information obtained from a person (FPCI) that is FPCI's confidential commercial and financial information, as well as containing

FPCI trade secrets.

65. FPCI's proposal sections are exempt from disclosure under FOIA. 5 U.S.C. § 552(b). Release of FPCI's proposal sections is therefore contrary to law.

66. HHS has failed to adequately explain its release decision—or to provide any reasoned basis for its decision at all—and the release decision is unsupported by substantial evidence, inadequate to permit effective judicial review, and is per se arbitrary and capricious.

67. HHS's determination to release the information is an abuse of discretion, contrary to law, and the result of a severely defective administrative procedure under the APA.

## COUNT IV
## Violation of the Administrative Procedure Act - Trade Secrets Act
## (FPCI Against HHS)

68. FPCI realleges paragraphs 1-23, 37-48, and 50 as if fully alleged herein.

69. The Trade Secrets Act provides that any government official or employee who publishes, discloses, or makes known in any manner, or to any extent not authorized by law any information received in the course of employment that relates to trade secrets, confidential statistical data, or amounts of any income, profits, or losses, shall be fined or imprisoned, and shall be removed from office or employment. 18 U.S.C. § 1905.

70. Information in FPCI's proposal is covered under the Trade Secrets Act.

71. Accordingly, HHS's decision to release FPCI's information in question is contrary to law and in violation of the Administrative Procedure Act, 5 U.S.C. §§ 701-706.

72. To the extent that HHS even considered the Trade Secrets Act before making its decision, such decision is arbitrary and capricious, an abuse of discretion, contrary to law, and the result of severely defective administrative procedure in violation of the Administrative Procedure Act, 5 U.S.C. §§ 701-706.

## PRAYER FOR RELIEF

**WHEREFORE**, AFHP and FPCI respectfully request the Court to:

(A) Declare that the information in question is subject to 18 U.S.C. § 1905 and exempt

from disclosure under 5 U.S.C. § 552(b)(4);

(B)     Declare that HHS's decisions to release AFHP's and FPCI's proposals lacked a reasoned basis, was contrary to law, was an abuse of discretion, and were unsupported by substantial evidence in violation of the APA;

(C)     Declare that AFHP's and FPCI's proposals contain confidential information that if released by HHS would cause AFHP and FPCI substantial competitive harm;

(D)     Set aside HHS's decisions to disclose the information in question as an abuse of discretion and not in accordance with law;

(E)     Preliminarily and permanently enjoin HHS from publicly disclosing the information in question; and

(F)     Grant such additional relief as the Court deems just and proper.

Dated:  November 8, 2018                    Respectfully submitted,

                                            /s/ Creighton R. Magid
OF COUNSEL:                                 Creighton R. Magid (DC Bar #476961)
                                            DORSEY & WHITNEY LLP
Alexander P. Hontos                         1401 New York Avenue, N.W., Suite 900
Daniel Falknor                              Washington, D.C.  20005
Sam Bolstad                                 Telephone: (202) 442-3555
DORSEY & WHITNEY LLP                        Fax: (202) 442-3199
50 South 6th Street, Suite 1500             magid.chip@dorsey.com
Minneapolis, MN  55402-1498
Telephone:  (612) 340-2600
Facsimile:  (612) 340-2868

                                            *Attorneys for Plaintiffs Arizona Family Health Partnership and Family Planning Council of Iowa*